UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
RAYMOND LIENAU,                                         :
                                                       :
                              Plaintiff,               :
                                                       :
              - against -                              :          **OPINION AND ORDER**
                                                       :          12-CV-6572 (ER)
P.O. ANGEL GARCIA, Individually, P.O. DONALD           :
PETERS, Individually, DETECTIVE TIMOTHY TAUSZ,         :
Individually, RACHEL WILLGOOS, Individually, and       :
TOWN OF YORKTOWN,                                      :
                                                       :
                              Defendants.               :
-----------------------------------------------------------------------x

Ramos, D.J.:

        Plaintiff Raymond Lienau ("Plaintiff" or "Lienau") brings this action pursuant to 42

U.S.C. § 1983 against Officer Angel Garcia ("Garcia"), Officer Donald Peters ("Peters"),

Detective Timothy Tausz ("Tausz"), and the Town of Yorktown ("Yorktown") (collectively, the

"Municipal Defendants") and Rachel Willgoos ("Willgoos"), alleging unlawful arrest and

malicious prosecution.  Amended Complaint ("Am. Compl.") (Doc. 15).  The Municipal

Defendants have cross-claimed against Willgoos for indemnification and contribution.  Doc. 17.

Currently before the Court is Defendant Willgoos' motion to dismiss the Amended Complaint, as

well as the Municipal Defendants' cross-claim.  Doc. 18.  For the reasons set forth below,

Defendant Willgoos' motion to dismiss is GRANTED.

    **I.    Factual Background**

        The following facts are taken from the allegations in the Amended Complaint, which the

Court accepts as true for purposes of this motion.[1]  *Famous Horse Inc. v. 5th Ave. Photo Inc.*,

624 F.3d 106, 108 (2d Cir. 2010).

---

[1] The parties dispute whether the Court can consider the documents attached to the Declaration of Courtney Wen
(Doc. 20) in determining the sufficiency of Plaintiff's allegations on Willgoos' motion to dismiss.  As the Court

### a.  Background Allegations

Plaintiff and Willgoos were married in 2000 and had three children together.  Am. Compl. ¶ 17.  In 2005, they got divorced and agreed to joint custody of their children, although Plaintiff alleges that he had physical custody of the children the majority of the time.  *Id.* ¶ 19. Plaintiff alleges that prior to the commencement of the divorce, Willgoos made numerous false allegations of abuse against him "in attempts to gain order[s] of protection so that [she] could obtain custody of the couple's children and obtain exclusive use of the marital residence."  *Id.* ¶ 22.

On November 7, 2002, Willgoos commenced a proceeding in the Superior Court of Connecticut seeking an order of protection and immediate custody of the couple's children.  *Id.* ¶ 23.  Willgoos filed an Affidavit for Relief from Abuse ("November 7 Affidavit"), "in which she falsely stated that Plaintiff had for the last eight months engaged in a continually escalating pattern of behavior including verbal, mental and physical abuse."  *Id.*  Plaintiff alleges that the false allegations "were made with malice and [with] the specific intent to obtain an order which gave [Willgoos] custody of the children," and that at the time that Willgoos filed the Affidavit, there was no evidence of any physical injury corroborating her allegations of abuse.  *Id.* ¶¶ 24, 26.  As a result of Willgoos' Affidavit, Plaintiff was ordered to surrender to the Norwalk Police Department and was issued a summons to report to the state court.  *Id.* ¶ 28.  Plaintiff alleges that officers from the Norwalk Police Department contacted his father, who was an active duty detective with the Yorktown Police Department at the time, to inform him of Willgoos' allegations against Plaintiff.  *Id.* ¶¶ 27, 29.  Plaintiff's father then informed his fellow Yorktown

---

finds that the allegations contained in the Amended Complaint fail to state a § 1983 claim against Willgoos, *see infra*, the Court need not consider the extraneous evidence attached to Defendant's motion papers.

police officers that "his son's wife was making false allegation[s] of abuse" against Plaintiff.  *Id.* ¶ 30.

Plaintiff alleges that as a result of Willgoos' November 7 Affidavit, the Connecticut state court awarded her an *ex parte* order of protection against Plaintiff.  *Id.* ¶ 31.  However, immediately prior to the hearing on the order, Willgoos withdrew her Affidavit and the proceeding was dismissed.  *Id.* ¶ 32.

Approximately four months later, on March 20, 2003, Willgoos filed another Affidavit for Relief from Abuse ("March 20 Affidavit") in the Superior Court of Connecticut, "in which she falsely alleged that Plaintiff continuously hit her, poked her in the face, shoved her to the floor while she was holding a child and that said events occurred in front of the children."  *Id.* ¶ 34.  Plaintiff alleges that Willgoos made the allegations in the Affidavit with knowledge that they were false and "with malice and spite, so that she could again use the legal system as a tool to advantage herself and harm the Plaintiff."  *Id.* ¶ 37.  As a result of the March 20 Affidavit, the Connecticut state court awarded another order of protection to Willgoos.  *Id.* ¶ 38.  Plaintiff alleges that Willgoos again withdrew the March 20 Affidavit immediately prior to the hearing on the order of protection, and that the proceeding was therefore dismissed.  *Id.* ¶ 39.

Plaintiff further claims that after his father's retirement from the Yorktown Police Department,[2] he remained in contact with various police officers and "made it known to the Yorktown Police officers that [Defendant] Willgoos had repeatedly made false allegations of abuse."  *Id.* ¶ 41.  Accordingly, Plaintiff alleges that the "lack of merit" of Willgoos' claims "were common knowledge among members of the Yorktown Police Department by virtue of the fact that Plaintiff's father had discussed the fabricated complaints with other officers" at the

---

[2] The Amended Complaint does not indicate the date of Plaintiff's father's retirement.

police department.  *Id.* ¶ 42.

Plaintiff further alleges that on or about March 1, 2008, Willgoos attacked Plaintiff with a knife after Willgoos had become enraged that Plaintiff's mother had visited the children.  *Id.* ¶ 44.  Plaintiff reported the attack to Officer McGuinan at the Yorktown Police Department, however, Officer McGuinan refused to file a report or arrest Willgoos "despite obvious evidence of a knife wound to the Plaintiff's hand."  *Id.* ¶ 45.  Plaintiff alleges that the following day, Willgoos falsely claimed to the Yorktown Police Department that Plaintiff had assaulted her.  *Id.* ¶ 46.  Willgoos signed a supporting deposition in which she falsely stated that on March 1, 2008, Plaintiff punched her in the head and face, grabbed her and threw her on the bed and ripped off her shirt, and that that she sustained a bloody nose and bumps on her head.  *Id.* ¶ 49.  Plaintiff claims that although there was no physical evidence of the alleged assault, he was nevertheless arrested by members of the Yorktown Police Department and charged with assault in the third degree, and that Willgoos obtained an order of protection "based upon [the] fabricated allegations of abuse."  *Id.* ¶¶ 48, 52.

On March 3, 2008, Willgoos filed a petition in family court requesting full custody of the children, falsely alleging, *inter alia*, that Plaintiff hit her in the head with a closed fist, causing pain in her jaw and a bloody nose, threatened to break her personal belongings, and then grabbed her and ripped her shirt.  *Id.* ¶¶ 53-54; *see also id.* ¶¶ 56-57.  Plaintiff alleges that the March 3, 2008 petition was withdrawn prior to the court conducting a hearing "because Willgoos knew the allegations contained therein were meritless and fabricated."  *Id.* ¶ 59.

Plaintiff generally claims that prior to February 4, 2010, Willgoos had "perpetrated a pattern, scheme and modus operandi whereby . . . she attempted to gain leverage . . . in the custody litigation by making numerous baseless allegations of abuse against Plaintiff to various

4

members of law enforcement[,] including the Yorktown Police Department." *Id.* ¶ 60.  Plaintiff further alleges that the Municipal Defendants were aware of Willgoos' pattern of making false complaints of abuse in an attempt to gain a tactical advantage in the pending custody action. *Id.* ¶ 61.

### b.  The February and April 2010 Arrests and Resulting Prosecution of Plaintiff

On or about January 18, 2010, Willgoos filed an application for sole custody, in which she "again made false allegations that Plaintiff had physically abused her." *Id.* ¶ 63.  Plaintiff alleges that the application for custody was denied on February 1, 2010 and that thereafter, Willgoos "became enraged, combative, angered and resentful and devised a plot to seek retribution against the Plaintiff by again making fabricated allegations . . . of criminal activity to both have Plaintiff falsely arrested/prosecuted and to enable her to make a further petition for custody." *Id.* ¶¶ 64-65.

On February 4, 2010, Plaintiff dropped the couple's son off for visitation with Willgoos. *Id.* ¶ 68.  When Plaintiff called Willgoos' residence later that day to speak with his son, who was sick at the time, he learned that Willgoos had left their son with Willgoos' boyfriend, in violation of a court order that required Willgoos to advise Plaintiff of the names of any individuals who would be babysitting their children. *Id.* ¶¶ 69-71.  Upon learning that Willgoos had left their son in the care of her boyfriend, Plaintiff called Willgoos to discuss the situation; however, Plaintiff alleges that in the middle of their conversation, Willgoos hung up on him. *Id.* ¶¶ 72-73.  Plaintiff claims that Willgoos knew that when she hung up on Plaintiff, he would call back to continue the conversation, and that each time Plaintiff "reinitiated the call," Willgoos would either answer the call and immediately hang up on him or let the call go to voicemail. *Id.* ¶¶ 76-78.

Although Plaintiff claims that Willgoos "knew that [he] was calling with a legitimate

purpose and [that] it was her intentional disconnecting of the calls that prompted Plaintiff to reinitiate the calls," Willgoos nevertheless contacted the Yorktown Police Department and reported to Defendant Garcia that Plaintiff was harassing her.  *Id.* ¶¶ 79-80.  Plaintiff alleges that Willgoos knowingly reported false information to Garcia and other members of the police department, including that Plaintiff threatened her, that Plaintiff said, "heads will roll, you fucking wait," and that Plaintiff repeatedly called her with no legitimate purpose other than to annoy, harass and alarm her.  *Id.* ¶¶ 81, 84.  Plaintiff further claims that Willgoos failed to inform Garcia or other officers of the motivation for Plaintiff's calls, i.e., to discuss the care of their sick child, *id.* ¶ 82, and that Plaintiff made the false statements "out of malice, spite and retribution for her application for custody of the children" and "for the specific purpose of instigating Plaintiff's baseless arrest and prosecution," *id.* ¶¶ 83, 85, 94-95.

On or about February 4, 2010, Garcia arrested Plaintiff for aggravated harassment "without a warrant and without probable cause to believe that Plaintiff had committed any crime or violation."  *Id.* ¶¶ 88-89.  Garcia prepared and signed a misdemeanor information charging Plaintiff with aggravated harassment in the second degree, and forwarded same to the District Attorney's office.  *Id.* ¶ 90.  Following Plaintiff's arraignment, the court issued an order of protection against him.  *Id.* ¶ 101.  Plaintiff alleges that by preparing the misdemeanor information, Garcia "initiated and continued a prosecution against the Plaintiff without probable cause to believe the prosecution could proceed and with malice."  *Id.* ¶ 91.  Additionally, Plaintiff claims that prior to the trial on Plaintiff's claims, Willgoos falsely informed the prosecutor that Plaintiff called her with the specific intent to harass and annoy her and, thus, along with the other Defendants, "induced the prosecutor to initiate and continue a baseless prosecution."  *Id.* ¶¶ 96-98, 104.

6

Plaintiff further claims that on or about April 7, 2010, when Plaintiff was dropping one of his children off with Willgoos, she failed to provide Plaintiff with certain information that she was required to provide pursuant to a court order. *Id.* ¶¶ 115-16.  Plaintiff advised Willgoos that he was going to the police department to file a complaint about her refusal to abide by the court order. *Id.* ¶ 117.  Plaintiff alleges that Willgoos subsequently contacted the Yorktown Police Department and falsely complained that Plaintiff had violated an order of protection by threatening her. *Id.* ¶¶ 119-20.  Plaintiff alleges that Willgoos conveyed this false information "for the sole purpose of having Plaintiff baselessly arrested and prosecuted for a crime he did not commit in anticipation of pursuing yet another baseless application to the Family Court for sole custody." *Id.* ¶ 121.  Based upon Willgoos' "fabricated account and contrived complaint," Defendant Peters arrested Plaintiff "without a warrant and without probable cause" and charged him with criminal contempt in the second degree. *Id.* ¶¶ 124, 127.  Peters also prepared and signed a misdemeanor information "which contained materially false statements of fact" and forwarded it to the prosecutor. *Id.* ¶¶ 130-31.  Following Plaintiff's arraignment, another order of protection was issued against him. *Id.* ¶ 133.  Plaintiff claims that Willgoos again repeated the false allegations against Plaintiff to the prosecutor prior to the case being tried. *Id.* ¶ 134.

The aforementioned charges were resolved in Plaintiff's favor on August 9, 2011 when the Honorable Ilan D. Gilbert dismissed the charges against him. *Id.* ¶¶ 106, 135.

## II.   Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc.*, 624 F.3d at 108.  However, this requirement does not apply to legal conclusions, bare assertions, or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'"  *Id.* (citing *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

### III.    Plaintiff Fails to Sufficiently Plead Joint Action Between Willgoos and the Municipal Defendants

Willgoos argues that the Amended Complaint should be dismissed in its entirety as against her because she is not a state actor and Plaintiff has failed to sufficiently plead "joint action" between Willgoos and the Municipal Defendants.  Def.'s Mem. L. (Doc. 19) at 10-13.

In order to state a claim under § 1983, a plaintiff must allege a constitutional violation committed under color of state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999).  "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."  *Id.* at 50 (internal quotation marks and citation omitted).  However, a plaintiff may maintain a § 1983 claim against a private actor if the plaintiff sufficiently alleges that the private actor "is a willful participant in joint action with the State or its agents."  *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.") (citation omitted).  "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the police."  *Forbes v. City of New York*, No. 05 Civ. 7331 (NRB), 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir.

8

1999)).  To establish joint action, a plaintiff must show "that the private citizen and the state

official shared a common unlawful goal; the true state actor and the jointly acting private party

must agree to deprive the plaintiff of rights guaranteed by federal law."  *Bang v. Utopia Rest.*,

923 F. Supp. 46, 49 (S.D.N.Y. 1996).  "The Supreme Court has also explained joint action

through the concept of a 'meeting of the minds' between law enforcement and private

individuals."  *Forbes*, 2008 WL 3539936, at *5 (citing *Adickes v. Kress & Co.*, 398 U.S. 144,

158 (1970)).

Moreover, to state a plausible § 1983 claim against a private individual, "[c]onclusory

allegations that [the] private individual conspired or took concerted action with state actors will

not suffice."  *Watson v. Grady*, No. 09 Civ. 3055 (KMK), 2010 WL 3835047, at *8 (S.D.N.Y.

Sept. 30, 2010) (citations omitted).  Rather, a plaintiff must allege "a sufficiently close nexus

between the State and the challenged action of the private party so that the action of the latter

may be fairly treated as that of the State itself, or that the private actor was jointly engaged with

state officials in a conspiracy to deprive the plaintiff of his constitutional rights."  *Id.* (internal

quotation marks and brackets omitted) (quoting *Bhatia v. Yale Sch. of Med.*, 347 F. App'x 663,

664-65 (2d Cir. 2009) (summary order)); *accord Johnson v. City of New York*, 669 F. Supp. 2d

444, 450-51 (S.D.N.Y. 2009) ("[A] plaintiff must allege that the private entity and state actors

carried out a deliberate, previously agreed upon plan, or that their activity constituted a

conspiracy or meeting of the minds.") (internal quotation marks, brackets and citations omitted).

Case law in this Circuit is well-established that the provision of information to a police

officer—even if that information is false or results in the officer taking affirmative action—is

insufficient to constitute "joint action" with state actors for purposes of §1983.  *Young v. Suffolk

Cnty.,* 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010) ("The provision of information to or

summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983.") (citing *Ginsberg,* 189 F.3d at 272) ("[Defendant]'s provision of background information to a police officer does not by itself make [Defendant] a joint participant in state action under § 1983 [and] Officer Fitzgerald's active role in attempting to resolve the dispute after [Defendant] requested police assistance in preventing further disturbance also does not, without more, establish that [Defendant] acted under color of law."))); *Valez v. City of New York*, No. 08 Civ. 3875 (DLC), 2008 WL 5329974, at *1, *3 (S.D.N.Y. Dec. 16, 2008) (holding that plaintiff failed to state a claim under § 1983 against his landlords based on allegations that the landlords gave the police false information that plaintiff was planting marijuana in his yard "out of malice and in an effort to get [the plaintiff] ejected from the home he was renting" where plaintiff failed to "allege facts suggesting that defendants and the police had any meeting of the minds or intent to conspire"); *see also Del Col v. Rice*, No. 11 Civ. 5138 (MKB), 2012 WL 6589839, at *8 (E.D.N.Y. Dec. 18, 2012) ("In order to satisfy the joint activity requirement, there needs to be something more than an allegation that the private party supplied information, even false information, to the police.") (citing *Stewart v. Victoria's Secret Stores, LLC,* 851 F. Supp. 2d 442, 446 (E.D.N.Y. 2012) ("A private party supplying information or seeking police assistance 'does not become a state actor ... unless the police officers were improperly influenced or controlled by the private party.'") (alteration in original) (citations omitted))).

Similarly, if a police officer's actions are based on the officer's own independent judgment, rather than the directive of the private party, the private party will not be deemed a state actor.  *See Young*, 705 F. Supp. 2d at 196 (citing *Shapiro v. City of Glen Cove,* 236 F. App'x 645, 647 (2d Cir. 2007) ("No evidence supports [Plaintiff]'s contention that [the private

defendant] acted jointly with the [municipal] defendants to deprive her of her constitutional rights, and ample evidence shows that the [municipal] officials who searched her house exercised independent judgment rather than acting at [the individual defendant's] direction.")); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) ("[A] private party who calls the police for assistance does not become a state actor unless the police were influenced in their choice of procedure or were under the control of the private party."); *Serbalik v. Gray,* 27 F. Supp. 2d 127, 131-32 (N.D.N.Y. 1998) ("[A] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority.") (citations omitted).

Here, Willgoos argues that the Amended Complaint fails as a matter of law "because it contains nothing more than conclusory allegations of concerted action between Willgoos and [the] Municipal Defendants."  Def.'s Mem. L. at 12.  Plaintiff, on the other hand, argues that the Amended Complaint sufficiently alleges that Willgoos acted jointly with the Municipal Defendants "by making malicious and knowing false accusations," thereby instigating Plaintiff's arrest and "jointly act[ing] with the police defendants by fabricating a contrived statement to baselessly continue the prosecution, thereby joining in the exercise of state authority."  Pl.'s Mem. L. Opp. (Doc. 21) at 14.  In support of his "joint action" theory, however, Plaintiff merely sets forth conclusory allegations of concerted action in the Amended Complaint which, standing alone, are insufficient to state a claim against a private actor under § 1983.  Specifically, Plaintiff summarily alleges that at all relevant times, Willgoos "engaged in joint action with the state actor defendants," Am. Compl. ¶ 16, that the Municipal Defendants "were complicit in Rachel Willgoos' scheme to . . . victimize Plaintiff," *id.* ¶ 43, that Willgoos was "a willful participant in the false arrest and prosecution of the Plaintiff," *id.* ¶ 85, *see also id.* ¶¶ 98, 123, and that Plaintiff "acted jointly with [Defendants] in causing the arrest of Plaintiff by knowingly and

11

intentionally providing false information that Plaintiff had yelled at her and threatened her," *id.* ¶ 128.  Plaintiff fails to allege *any* specific facts or events demonstrating that the Municipal Defendants were in fact aware of or participants in Willgoos' alleged "scheme," or from which the inference can be drawn that that Willgoos and the Municipal Defendants had a plan or prearrangement to violate Plaintiff's constitutional rights.  Indeed, Plaintiff himself *admits* in his opposition papers that merely providing information to a police officer does not transform a private actor into a state actor, and that a private actor only becomes a state actor for § 1983 purposes when she "takes a more active role and jointly engages in action with state actors." Pl.'s Mem. L. Opp. at 14.  Here, however, Plaintiff has failed to allege any facts suggesting that Willgoos did, in fact, directly engage with the Municipal Defendants or take an active role in the arrest of Plaintiff.

Moreover, Plaintiff does not allege any facts suggesting that Willgoos exercised control or undue influence over the Municipal Defendants.  To the contrary, Plaintiff's allegations establish that Willgoos reported certain incidents regarding Plaintiff to the police, and that the police exercised independent judgment in arresting Plaintiff.  Indeed, Plaintiff himself admits that prior to both his arrests by the Municipal Defendants, orders of protection had been issued against him by the state court.  *See* Am. Compl. ¶¶ 52 (March 2008 order of protection), 101 (February 2010 order of protection).  Moreover, with respect to Plaintiff's February 2010 arrest, Plaintiff *admits* that the incident giving rise to Willgoos' complaint to the police department— i.e., that Plaintiff repeatedly called Willgoos after she had hung up the phone on him—did, in fact, occur, although he claims that he was calling for a legitimate purpose.  *See id.* ¶¶ 76-79. Accordingly, even accepting Plaintiff's allegations as true for purposes of Willgoos' motion to dismiss, it was reasonable for the Municipal Defendants to arrest Plaintiff based upon allegations

that he had violated the existing orders of protection by harassing and threatening Willgoos.

Although Plaintiff alleges that Willgoos' complaints to the police were fabricated, he does not allege that the Municipal Defendants actually *knew* that Willgoos' allegations were false or that Willgoos ever indicated to them that she was making such allegations in order to gain leverage in her custody case.  Plaintiff's general allegation that the Municipal Defendants *should* have known that Willgoos' allegations were false because Plaintiff's father had previously told members of the Yorktown Police Department that Willgoos was fabricating allegations against Plaintiff, *id.* ¶¶ 41-43, 61-62, 87, 92, 122, is insufficient to state a claim that *Willgoos* and the Municipal Defendants acted pursuant to a deliberate, previously-agreed upon plan to violate Plaintiff's constitutional rights.

The cases upon which Plaintiff relies in support of his argument that Willgoos acted jointly with the Municipal Defendants are distinguishable from the facts at issue here, as they involve allegations of *direct involvement* and *active participation* by the private defendant in the alleged state action.[3]  *See, e.g.*, *Anilao v. Spota*, 774 F. Supp. 2d 457, 500-02 (E.D.N.Y. 2011) (holding that plaintiffs sufficiently alleged "joint action" where private defendants arranged a meeting with the district attorney "for the purpose of . . . pressuring [the district attorney] to file an indictment that he would not otherwise have filed against the plaintiffs," where the private defendants and the County defendants subsequently "agreed that the indictment [of plaintiffs]

---

[3] Contrary to Plaintiff's contention, in *TADCO Constr. Corp. v. Dormitory Auth. of the State of New York*, 700 F. Supp. 2d 253 (E.D.N.Y. 2010), the court did not "implicitly [hold]" that the alleged actions sufficed to establish action under the color of law."  Pl.'s Mem. L. Opp. at 16.  Rather, the court did not decide the issue *at all* in light of the defendants failure to "challenge plaintiffs' claim that [they] were acting under color of state law."  *TADCO Constr. Corp.*, 700 F. Supp. 2d at 262.  Plaintiffs' reliance on *Stampf v. Long Island R.R. Auth.*, No. 07 Civ. 3349 (SMG), 2011 WL 3235704 (E.D.N.Y. July 28, 2011), is similarly misplaced.  In that case, the court considered whether an individual who encouraged the authorities to act may be held liable for malicious prosecution under New York law. *Id.* at *1.  Contrary to Plaintiff's contention, the court *did not* address the question of whether that individual defendant's actions in lying to the police constituted "joint action" sufficient to hold the defendant liable under § 1983.  *Id.*

would be procured, in part, through the use of false testimony . . . as well as by the withholding of exculpatory evidence," and where the County defendants "agreed to do what was necessary to procure the indictment, for the sole benefit of the [private defendants]")[4]; *Young*, 705 F. Supp. 2d at 191, 198-99 (holding that private actor defendants were more than "mere complainants" where plaintiff alleged that defendants "brought garbage, debris, urine, feces and other matters" into the plaintiff's residence while she and her children were absent "in order to create unsanitary, uninhabitable, and unsafe conditions therein," subsequently summoned the police to the residence, "authorized or consented to the search (even though they allegedly lacked such authority), and accompanied the police on the alleged unlawful search itself"); *Watson*, 2010 WL 3835047, at *8 (holding that plaintiff plausibly stated a claim that private defendant was working in concert or conspiring with state actors to maliciously prosecute plaintiff where private defendant worked with state actors "to frame allegations against Plaintiff" and state actors "ignored facts that would exonerate Plaintiff in order to protect [the private defendant]").[5]

---

[4] As to a second set of private actor defendants, the court in *Anilao* held that allegations that the defendants "filed complaints against plaintiffs with the New York State Education Department and the Suffolk County Police Department" were insufficient to render the private parties "state actors" for purposes of § 1983 liability. *Id.* at 503. Thus, the court found that "in the absence of any allegations that [the private defendants] were more directly involved in the investigation and prosecution of plaintiffs," the § 1983 claims against the private defendants should be dismissed. *Id.*

[5] Plaintiff also relies on *Weintraub v. Bd. of Educ. of City of New York*, 423 F. Supp. 2d 38, 58 (E.D.N.Y. 2006), which contains broad language suggesting that a civilian who makes a false statement to a police officer can be held liable for joint action under Section 1983. *Id.* at 58 ("If a victim makes false statements to the police, with the intent to have an innocent person arrested . . . she may not only be held accountable for false imprisonment under state tort law, but under federal law, for invoking the state's power to intentionally violate a citizen's constitutional rights."). However, cases interpreting *Weintraub* have limited its application to the narrow circumstances presented in that case, which involved allegations demonstrating a long-standing vendetta by the private defendant against the plaintiff. *See Samtani v. Cherukuri*, No. 11 Civ. 2159 (CBA) (RER), 2012 WL 1657154, at *4 (E.D.N.Y. May 11, 2012) (citing cases), *vacated on other grounds*, 2012 WL 1821413 (E.D.N.Y. May 18, 2012); *see also Thomas v. City of New York*, No. 12 Civ. 5061 (FB) (SMG), 2013 WL 3810217, at *4–*5 (E.D.N.Y. July 23, 2013) (holding that "[u]nlike the longstanding vendetta in *Weintraub*, which consisted of 11 acts over more than 1 year, plaintiff alleges just 3 acts occurring within 1 week," and that "even assuming that the [private] defendants made a false report to the police, bad faith cannot be inferred from [that] act alone"). Moreover, at least one court has questioned whether *Weintraub* was even correctly decided under relevant Supreme Court precedent. *Samtani*, 2012 WL 1657154, at *4. Another case on which Plaintiff relies, *Coakley v. Jaffe*, 49 F. Supp. 2d 615 (S.D.N.Y. 1999), is

Unlike the private defendants in the aforementioned cases, Willgoos is alleged *only* to have provided information—albeit false information—about Plaintiff to the Municipal Defendants.  Other than conclusory allegations that Willgoos acted jointly with the Municipal Defendants, Plaintiff fails to set forth *any* allegations that Willgoos was directly involved or actively participated in the subsequent arrest and prosecution of Plaintiff.  Accordingly, as Plaintiff's conclusory allegations of joint action are insufficient to state a § 1983 claim against Willgoos—a private actor—the Amended Complaint must be dismissed as against Willgoos.[6]

## IV.    The Municipal Defendants' Cross-Claim is Dismissed

The Municipal Defendants cross-claimed against Willgoos pursuant to CPLR § 3019[7] and/or for "indemnification and apportionment of responsibility, if any."  Doc. 17.  Willgoos moves for dismissal of the cross-claim on several bases.  *See* Def.'s Mem. L. at 22-24.  The Municipal Defendants have not filed any papers in response to Willgoos' motion to dismiss their cross-claim.

The Court finds that dismissal of the Municipal Defendants' cross-claim is warranted.  As an initial matter, Plaintiff has failed to state a § 1983 claim against Willgoos, as discussed *infra*, and the Municipal Defendants merely rely on Plaintiff's deficient Amended Complaint in

---

similarly distinguishable, as there, the plaintiffs alleged that the private defendants, who conspired to obtain an unwarranted criminal indictment against the plaintiffs, actually worked with the district attorney, whose "connivance" they eventually obtained.  *Id.* at 620.  The plaintiffs alleged that the district attorney then conducted "a flawed investigation" and purportedly impeded the plaintiffs' ability to defend themselves.  *Id.*

[6] Willgoos argues in the alternative that dismissal of the Amended Complaint is proper because, even assuming Plaintiff sufficiently alleged joint action, he fails to state a claim for malicious prosecution under New York law. Def.'s Mem. L. at 15.  As the Court finds that Plaintiff has failed to allege joint action between Willgoos and the Municipal Defendants, Plaintiff's Amended Complaint is dismissed in its entirety against Willgoos, and it therefore need not address the sufficiency of Plaintiff's underlying allegations of Defendants' constitutional violations.

[7] CPLR § 3019(b) states:  "(b) Subject of cross-claims.  A cross-claim may be any cause of action in favor of one or more defendants or a person whom a defendant represents against one or more defendants, a person whom a defendant represents or a defendant and other persons alleged to be liable.  A cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

support of their cross-claim for contribution.  Dismissal is therefore warranted on that basis

alone.

Even assuming *arguendo* that Plaintiff sufficiently stated a § 1983 claim against

Willgoos, however, case law in this Circuit is clear that there is no right to contribution or

indemnification under § 1983.  *See Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 184

(E.D.N.Y. 2010) ("No right to contribution exists under § 1983.  Nor is there a federal right

of indemnification under the statute.") (citations omitted); *Mason v. City of New York*, 949 F.

Supp. 1068, 1079 (S.D.N.Y. 1996) ("[F]ederal law does not establish a right to contribution

under Section 1983.").  Courts in this Circuit have also consistently held that a defendant cannot

incorporate state law claims for contribution or indemnification under § 1983 pursuant to 42

U.S.C. § 1988.[8]  *See, e.g.*, *Greene v. City of New York*, No. 08 Civ. 243 (RJD) (CLP), 2010 WL

1936224, at *4 (E.D.N.Y. May 12, 2010) ("Even assuming that New York law provides for a

right to contribution under these circumstances . . . permitting the [Defendant] to invoke a state

law right to contribution on Greene's federal claims asserted under Section[] 1983 . . . would be

inconsistent with Congress's purpose of deterring the deprivation of constitutional rights in

enacting [that] statute[].");  *Crews v. Cnty. of Nassau*, 612 F. Supp. 2d 199, 213 (E.D.N.Y. 2009

("[T]his Court agrees with the clear majority of courts that, in general, permitting a right of

contribution under Section 1983 would conflict with the policies underlying the statute and is,

therefore, inapplicable to defendants in Section 1983 actions.");  *Mason*, 949 F. Supp. at 1079

---

[8] 42 U.S.C. § 1988 states:  "The jurisdiction in civil . . . matters conferred on the district courts by the provisions of [42 U.S.C. § 1983] . . . for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . ."

("[C]ontribution among joint tortfeasors in Section 1983 cases would conflict impermissibly with the statutory goal of deterrence and is impermissible under the third prong of the Section 1988 test.").

Accordingly, as the Municipal Defendants' cross-claim against Willgoos relies entirely on Plaintiff's deficient Amended Complaint, and as case law in this Circuit is clear that there is no right to indemnification or contribution under § 1983, the Municipal Defendants' cross-claim is dismissed.

## V.    Conclusion

For the reasons set forth above, Willgoos' motion to dismiss the Amended Complaint and the Municipal Defendants' cross-claim is GRANTED.  Accordingly, the only remaining Defendants in this case are the Municipal Defendants, i.e., Officer Angel Garcia, Officer Donald Peters, Detective Timothy Tausz, and the Town of Yorktown.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 18.

The remaining parties are directed to appear for a conference on this matter on **Friday, January 24, 2014 at 3:00 pm**.

It is SO ORDERED.

Dated:    December 19, 2013
          New York, New York

_____
Edgardo Ramos, U.S.D.J.

17